UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ANTONIO ESCOBAR,<br><br>                         Plaintiff,<br><br>    v.<br><br>BRANDON STORER; and DOES 1<br>through 10, Inclusive,<br><br>                 Defendants. | Case No. 4:13-cv-00338-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

In this civil rights action filed under 42 U.S.C. § 1983, Plaintiff Antonio Escobar alleges that Defendant Brandon Storer, a police officer with the Idaho Falls Police Department, violated Escobar's rights under the Fourth Amendment. In particular, Escobar claims he was compliant with all of Officer Storer's orders but nevertheless was arrested and maliciously prosecuted for resisting and obstructing an officer. Escobar alleges also that Officer Storer used excessive force by tasing Escobar three times during the course of the arrest.

Before the Court is Officer Storer's motion for summary judgment, (Dkt. 17), in which he seeks summary judgment on all of Escobar's claims and claims qualified

immunity. For reasons explained below, the Court will grant Officer Storer's motion for summary judgment in part and deny it in part.

## PROCEDURAL HISTORY

Escobar filed this suit on August 5, 2013, alleging three causes of action against Officer Storer under 42 U.S.C. § 1983: (1) false arrest; (2) excessive force; and (3) malicious prosecution. On June 27, 2014, Officer Storer moved for summary judgment on all of Escobar's claims. (Dkt. 17.) Escobar did not file a response to Officer Storer's motion for summary judgment within 21 days, as required by the federal rules of civil procedure and, more specifically, District of Idaho Local Civil Rule 7.1(c).

After Escobar's response deadline lapsed, the Court initiated a telephonic status conference on September 23, 2014. During that conference, Escobar's counsel explained that he was waiting to receive a notice of hearing before filing his response to the motion. The next day, the Court entered an order requiring Escobar to file a response,[1] (Dkt. 19) and, that same afternoon, Escobar complied by filing his response brief and affidavit in opposition to summary judgment. (Dkt. 20.) Officer Storer filed a reply brief on October 8, 2014. (Dkt. 21.) In addition to addressing Escobar's substantive arguments, Officer Storer's reply requests the Court to strike Escobar's response for untimeliness.

On November 3, 2014, the Court heard oral arguments on Officer Storer's motion for summary judgment. At that time, the Court took the matter under advisement and now issues this disposition.

---

[1] The Court ordered Escobar to file his response, despite Officer Storer's objection during the status conference.

**FACTS**[2]

On the evening of August 6, 2011, at approximately 9:45 p.m., Officer Storer, along with several other officers, responded to a report of a fight in progress at a Buffalo Wild Wings restaurant and bar in Idaho Falls, Idaho. (Storer Aff. ¶ 3, Dkt. 17-7 at 2.) The record does not contain any details about the fight—for instance, who instigated the fight, how many people were involved, if weapons were involved, if injuries were sustained, or if any criminal charges resulted from the fight. The record does indicate that, although Escobar was not involved in the fight, he was present at Buffalo Wild Wings at approximately the same time the fight occurred. (Escobar Depo. 86:16–25, Dkt. 17-3 at 10.) Escobar left the restaurant and headed toward his vehicle on the north side of the building.[3] When he heard police arrive, he began running because he "did not want to be around when others were being arrested." (Escobar Aff. ¶¶ 3–4, Dkt. 20-1 at 1–2.)

When the officers arrived at the southwest side of the restaurant, they immediately noticed several people in the parking lot and around the restaurant. (Storer Aff. ¶ 3, Dkt. 17-7 at 2.) The officers began speaking with various individuals to determine what had occurred inside the restaurant. (*Id.*) While the officers were speaking with potential witnesses, Officer Storer heard the restaurant's manager shout that a Hispanic male

---

[2]      The following facts are undisputed unless otherwise indicated. When the facts are disputed, they are taken in the light most favorable to Escobar, the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (recognizing the district court's obligation to construe the record in the light most favorable to the nonmoving party on motion for summary judgment).

[3]      It is unclear from the record exactly when Escobar left the restaurant.

wearing a white shirt had been involved in the fight, and was running from the scene on the north side of the building.[4] (*Id.* ¶ 4.)

Officer Storer proceeded to the north side of the building to look for the man in the white shirt identified by the manager. There, he observed Escobar wearing a white shirt and running to his vehicle. Once Officer Storer observed Escobar running, he shouted at Escobar to stop running. The parties agree that Escobar turned and faced Officer Storer when the officer first shouted "stop," but they dispute what happened next.

According to Officer Storer, Escobar continued to run toward a grassy knoll after Officer Storer ordered him to stop. (Storer Aff. ¶¶ 4–5, Dkt. 17-7 at 2.) Officer Storer then "cut [Escobar] off," drew his taser, and again ordered Escobar to stop. (*Id.* ¶ 5.) At this point, Escobar stopped running. Officer Storer ordered Escobar to "get on the ground" four times and advised Escobar that he would be tased if he did not comply. (*Id.*) Escobar allegedly did not comply with these orders, so Officer Storer took control of Escobar's right arm, which was in the air, and forced Escobar to the ground. (*Id.* ¶ 6.) Officer Storer then attempted to handcuff Escobar but could not get control of Escobar's left arm despite Officer Storer's orders to Escobar to surrender it. (*Id.* ¶ 7.)

Officers Dax Siddoway, Dustin Cook, and Spencer Steel arrived to assist Officer Storer in physically restraining Escobar.[5] (*Id.*) Escobar continued to resist surrendering

---

[4]    It is unclear from the record who the manager was directing this information to: Officer Storer's affidavit simply states that "the manager of Buffalo Wild Wings yelled" the information. (¶ 4, Dkt. 17-7 at 2.)

[5]    The accounts of Officers Cook, Siddoway, and Steel mirror Officer Storer's account of the incident. (Dkt. 17-4, 17-5, 17-6.)

his left arm, so Officer Storer removed the probe cartridge from his taser, and applied the

taser in drive-stun mode to Escobar's lower back area. (*Id.* ¶ 8.) Escobar then surrendered

his left arm, allowing Officer Storer to place him in handcuffs. Officer Storer reported

that Escobar sustained an "abrasion to his left eye" during the struggle, but Officer Storer

characterized the injury as "superficial" and one not requiring medical attention. (*Id.*)

According to Escobar's account, Escobar immediately complied with Officer

Storer's first order to stop, faced Officer Storer, and raised his arms in surrender.

(Escobar Aff. ¶ 5, Dkt. 20-1 at 2.) Although Escobar was standing still with his arms

raised, Officer Storer fired his taser in dart mode,[6] striking Escobar in the stomach.[7] (*Id.* ¶

6.) Escobar was knocked to the ground and physically subdued by the four officers,

including Storer. (*Id.* ¶ 7.) The officers drove Escobar's face into the asphalt, and Officer

Storer, using his taser in drive-stun mode, tased Escobar twice more in the lower back.[8]

---

[6]     Although Escobar does not explicitly use the term "dart mode" in his Complaint, he
clearly alleges the use of a taser when he and Officer Storer were not yet in direct physical
contact. (Dkt. 1 at ¶ 5.) This allegation implies that the taser was used in dart mode rather than
drive-stun mode, because drive-stun mode requires direct contact with the victim. *Mattos v.
Agarano*, 661 F.3d 433, 443 (9th Cir. 2011) (en banc).

[7]     Officer Storer claims he removed the dart cartridge before deploying his taser and thus
denies firing the taser in dart mode. Officer Storer substantiates this claim with an affidavit of
Officer Richard Sampson. (Dkt. 21-1.) Officer Sampson is a member of the Pocatello Police
Department and is a "TASER International basic instructor." (*Id.* ¶ 2.) Officer Sampson is very
familiar with the marks that would be left on an individual after being struck with a taser
employed in either dart mode or drive-stun mode. (*Id.* ¶ 3.) He reviewed the photographs
submitted by Escobar (Dkt. 25-1) and definitively stated that the picture of the marks left on
Escobar's stomach "are not indicative of a TASER barb piercing the skin." (Dkt. 21-1 at ¶ 3.)

[8]     The Complaint alleges Escobar was tased in drive-stun mode only once. (Dkt. 1 at 3.)
Whether Officer Storer tased Escobar once in drive-stun mode or twice in quick succession (as
alleged in Escobar's affidavit) is immaterial to the Court's excessive force analysis below.

**MEMORANDUM DECISION AND ORDER - 5**

(*Id.* ¶ 7–8.) Escobar claims the incident resulted in injuries to his stomach, the left side of his face, and his back,[9] all of which healed within approximately one month after the incident. (Escobar Depo. 88:15–20, Dkt. 17-3 at 10.)

Escobar was arrested for resisting or obstructing an officer, a misdemeanor under Idaho Code § 18-705. He paid a $300 surety bond to be released from jail that day and later paid an attorney $500 to defend the charge against him. According to Bonneville County District Court records, the trial in Escobar's criminal case was continued several times during the fall of 2011 and the winter of 2012. (Dkt. 17-3 at 5–6.) On May 2, 2012, nearly ten months after Escobar's arrest, a state magistrate judge exonerated Escobar's surety bond and dismissed the case for reasons that do not appear in the record.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure directs the court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Critically, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[9] Escobar's alleged injuries are depicted in three photographs attached to his amended affidavit. (Dkt. 24.)

party.'" *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 514 (9th Cir. 2010) (quoting *Anderson*, 477 U.S. at 248).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir.2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id.* "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id.* "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Factual disputes that would not affect the outcome of the suit are irrelevant to the resolution of a motion for summary judgment. *Anderson*, 477 U.S. at 248. As to the specific facts offered by the non-moving party, the Court does not weigh conflicting evidence but draws all inferences in the light most favorable to the non-moving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Likewise, direct testimony of the non-moving party, however implausible, must be believed because the Court cannot resolve credibility questions at the summary judgment stage. *See Leslie v. Groupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). But, when confronted with a purely legal question, the Court does not defer to the nonmoving party.

**DISCUSSION**

## 1. Officer Storer's Request to Strike Escobar's Response as Untimely

As a preliminary matter, the Court will address Officer Storer's request to strike Escobar's response as untimely under the Court's local rules. Local Rule 7.1(c)(1) requires a responding party to serve and file a response brief within 21 days after service of a motion. Escobar did not file a response within this time period, and this issue was addressed at a status conference initiated by the Court on September 23, 2014. The Court ordered Escobar to file a response on or before October 14, 2014, after his counsel explained that he missed the response deadline because he believed the deadline was tied to a hearing date on the motion (as it is in Idaho state court). Escobar filed his response the day after the status conference, on September 24, 2014.

Although Officer Storer is technically correct that Escobar's response was untimely under Local Rule 7.1(c) and that Escobar has failed to show good cause for missing the filing deadline,[10] this perspective obscures the overriding policy favoring decisions on the merits—a policy expressed in the local rules, the case law of the United States Court of Appeals for the Ninth Circuit, and the Federal Rules of Civil Procedure.

Local Rule 7.1(e)(2) states: "In motions brought under the Federal Rule of Civil Procedure 56, if the non-moving party fails to timely file any response documents required to be filed, such failure *shall not* be deemed a consent to the granting of said motion by the Court." Dist. Idaho Loc. Civ. R. 7.1(e)(2) (emphasis added). Additionally,

---

[10] Escobar's counsel's stated reason for missing the response deadline was a confusion about which set of procedural rules govern this proceeding. The fact that Escobar's response was filed virtually immediately after ordered by the Court supports his stated reason for untimeliness.

the Ninth Circuit has adopted "the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits" whenever possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In accord with this policy, the Ninth Circuit found error when a district court granted partial summary judgment "solely on the basis of [a] local rule violation." *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). Lastly, Federal Rule of Civil Procedure 1 states that the rules "should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

Officer Storer does not suggest that considering Escobar's response would unduly delay this proceeding, unreasonably increase its expense, or otherwise render the Court's determination unjust. On the other hand, it would be highly prejudicial to Escobar to strike his opposition to Storer's motion for summary judgment because of a violation of the local rule at issue in this instance. Striking Escobar's response would frustrate rather than facilitate a decision on the merits of this case. Accordingly, and because this issue was addressed during the status conference on September 23, 2014, Officer Storer's request to strike Escobar's response is denied as moot.

## 2.  42 U.S.C. § 1983: Civil Rights Violation Claims in General

Section 1983 is "not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). The purpose of section 1983 is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights, and to

provide relief to harmed parties when their federally guaranteed rights are harmed by state actors. *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To establish a prima facie case under § 1983, a plaintiff "must adduce proof of two elements: (1) the action occurred under 'color of law' and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right." *Souders v. Lucero*, 196 F.3d 1040, 1043 (9th Cir. 1999) (citing *Parratt v. Taylor*, 451 U.S. 137, 140 (1979)). In other words, to state a claim under § 1983, a plaintiff must allege: "(1) a violation of rights protected by the Constitution or created by federal statute (2) proximately caused (3) by conduct of a 'person' (4) acting under color of state law." *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Each of Escobar's causes of action allege a violation of his constitutional rights. Both the false arrest and excessive force claims allege a violation of Escobar's Fourth Amendment right to be free from unreasonable search and seizure. U.S. CONST. amend IV. Similarly, Escobar claims that he was maliciously prosecuted in violation of his Fourteenth Amendment right. U.S. CONST. amend XIV. There is no dispute that Officer Storer was a person acting under color of law at the time of the alleged violations.

**3.      Legal Standard for Qualified Immunity**

Officer Storer claims he has qualified immunity from each of Escobar's claims. Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The purpose of this doctrine is "to strike a balance between the competing 'need to hold public

officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Pearson*, 555 U.S. at 236). An officer with qualified immunity is not liable even when his or her conduct resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotation marks omitted).

There are two prongs to the qualified immunity analysis: (1) whether the officer's conduct, viewed in the light most favorable to the party asserting injury, violated a constitutional right; and (2) whether the right "was clearly established" such that a reasonable officer would have known his conduct violated the right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *receded from by Pearson*, 555 U.S. 223. The Court need not address these issues in a particular order. *Pearson*, 555 U.S. at 236. Rather, it is within the Court's discretion to decide which prong to address first in light of the circumstances of the case and considerations of judicial economy. *Id.* In this case, the Court sees no reason to depart from this order of analysis and will take up each prong, in turn, in relation to the false arrest and excessive force claims asserted by Escobar.

4.      **False Arrest**

The Fourth Amendment right to be secure from unreasonable searches and seizures "applies to all seizures of the person," including initial and brief stops falling short of traditional arrest. *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). Arrests made

without a warrant are unreasonable, and therefore violate the Fourth Amendment, *if* conducted without probable cause. *See Beauregard v. Wingard*, 362 F.2d 901, 903 (9th Cir. 1966) ("[W]here probable cause does exist civil rights are not violated by an arrest even though innocence may subsequently be established.").

To determine whether an officer has qualified immunity from a false arrest claim, the Court considers "(1) whether there was probable cause for the arrest; and (2) whether it is *reasonably arguable* that there was probable cause for arrest—that is, whether reasonable officers could disagree as to the legality of the arrest such that the arresting officer is entitled to qualified immunity." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011) (citing *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)). An officer will not be entitled to qualified immunity "if officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause. . . ." *Jenkins*, 478 F.3d at 87. Because Officer Storer arrested Escobar without a warrant, he is entitled to qualified immunity only if he acted with either actual or arguable probable cause.

## A. *Reasonable Suspicion to Temporarily Detain*

There are important distinctions between what constitutes reasonable suspicion versus what constitutes probable cause, and what an officer is permitted to do in one situation as opposed to the other. However, "[t]he concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)).

An officer has "reasonable suspicion" when he or she can articulate facts to support the notion that "'criminal activity may be afoot,' even if the officer lacks probable cause." *Id.* The officer must "articulate something more than an inchoate and unparticularized suspicion or hunch." *Id.* (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)) (internal quotation marks omitted). *Terry* permits brief investigatory detentions based on reasonable suspicion of criminal activity. *Terry* also permits officers to conduct "a reasonable search for weapons . . . where [the officer] has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." 392 U.S. at 27. However, the Supreme Court has emphasized that this is "narrowly drawn authority" such that the officer "must articulate a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 128 (2000) (internal quotations and citations omitted).

Escobar concedes that Officer Storer "may have had" the right to temporarily detain and question him by virtue of Escobar's resemblance to the Hispanic white-shirted suspect described by the restaurant manager. (Dkt. 20 at 9.) But, Escobar argues that the officers lacked any additional knowledge that would have elevated that reasonable suspicion to probable cause to effectuate an arrest.

In light of *Terry* and the undisputed facts at the moment when Officer Storer first observed Escobar running, the Court finds that Officer Storer had sufficient reasonable

suspicion for an investigative *Terry* stop. As soon as Escobar stopped running,[11] Officer

Storer was permitted to temporarily detain and question Escobar, and could perform a

protective search for weapons *if* he drew a reasonable inference that Escobar was armed.

Therefore, Officer Storer acted lawfully when he ordered Escobar to stop running from

the scene of the reported fight.

### B.  *Probable Cause to Arrest*

It has long been held that probable cause is required to effect a warrantless arrest

consistent with the Fourth Amendment. *See Beck v. Ohio*, 379 U.S. 89, 90 (1964)

("Whether [the] arrest was constitutionally valid depends . . . upon whether, at the

moment the arrest was made, the officers had probable cause to make it. . . ."). "Probable

cause for a warrantless arrest arises when the facts and circumstances within the officer's

knowledge are sufficient to warrant a prudent person to believe that the suspect has

committed an offense." *Crowe v. Cnty. Of San Diego*, 608 F.3d 406, 432 (9th Cir. 2010)

(internal alterations omitted) (quoting *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir.

1990)). "The validity of the arrest does not depend on whether the suspect actually

committed a crime; the mere fact that the suspect is later acquitted of the offense for

which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*,

443 U.S. 31, 36 (1979). The Supreme Court of the United States has made it clear that

---

[11]     The facts are disputed as to when Escobar stopped running. According to Escobar's
sworn affidavit, (Escobar Aff. ¶ 5, Dkt. 20-1 at 2 ), he immediately complied with Officer
Storer's first order to stop. But, according to Officer Storer's affidavit, (Storer Aff. ¶¶ 4–5,
Dkt. 17-7 at 2), Escobar did not stop running until Officer Storer had his taser drawn and
ordered Escobar to stop a second time. Either way, Escobar stopped running upon Officer
Storer's command.

"the kinds and degree of proof and the procedural requirements necessary for a conviction are not prerequisites to a valid arrest." *Id.* (citing *Gerstein v. Pugh*, 420 U.S. 103, 119–23 (1975); *Brinegar v. United States*, 338 U.S. 160, 174–76 (1949)). Rather, "[b]ecause the probable cause standard is objective, probable cause supports an arrest so long as the arresting officers ha[ve] probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest." *Edgerly v. City and County of San Francisco*, 599 F.3d 946, 954 (9th Cir. 2010) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–155 (2004)).

It is undisputed that, at the point Escobar stopped (either after the first or second command by Officer Storer to stop running), Officer Storer did not ask Escobar any investigative questions. Instead, taking the facts in a light most favorable to Escobar, Officer Storer immediately discharged his taser in dart mode and proceeded to forcibly detain him.[12] (Escobar Aff. ¶¶ 5–6, Dkt. 20-1 at 2.) Officer Storer has not presented evidence to suggest Escobar may have been armed that evening. Even if Officer Storer had presented an articulable reason to believe Escobar was armed, that would permit Officer Storer to conduct only a reasonable search for weapons—not to arrest Escobar.[13]

---

[12]     Officer Storer contends that, after Escobar stopped running, he ordered Escobar to the ground four times and warned of the potential use of the taser if Escobar did not comply. (Storer Aff. ¶ 5, Dkt. 17-7 at 2.) Officer Storer further contends that because Escobar disregarded the orders, Officer Storer physically forced him to the ground. (*Id.* ¶ 6.)

[13]     The briefing in support of the motion for summary judgment states that, "Officer Storer had no idea whether [Escobar] was armed" (Dkt. 17-1 at 13), and "Escobar posed a significant threat by virtue of potentially being armed." (*Id.* at 14.) Although the Court recognizes the significant importance of officer safety, Officer Storer has not presented an articulable reason to believe that Escobar may have been armed.

The mere resemblance of Escobar to the restaurant manager's general description of a white-shirted Hispanic male suspect does not suffice under the circumstances to establish probable cause for an arrest, but it does establish reasonable suspicion to temporarily detain. *See Grant v. City of Long Beach,* 315 F.3d 1081, 1088 (9th Cir. 2002). Nor can Officer Storer's initial observation of Escobar running justify an arrest. *See United States v. Navedo*, 694 F.3d 463, 474 (3d Cir. 2012) ("Our holding today reiterates that unprovoked flight, without more, cannot elevate reasonable suspicion to detain and investigate into the probable cause required for an arrest.").

However, Officer Storer argues he had probable cause to arrest Escobar because he, and the other officers present, all recount in their affidavit testimony the actions Escobar took to avoid the stop command and to resist arrest.[14] Under Idaho Code § 18-705, a person is guilty of "resisting and obstructing officers" if he "willfully resists, delays or obstructs any public officer, in the discharge, or attempt to discharge, of any duty of his office. . . ." I.C. § 18-705. But this argument can succeed only if the facts taken in a light most favorable to Escobar establish probable cause for the arrest.

The parties dispute what happened after Officer Storer first ordered Escobar to stop. Escobar's sworn affidavit states that, when "[a]n officer shouted 'Stop!' at me[,] I immediately stopped, raised my hands in the air, and turned around." (Escobar Aff. ¶ 5,

---

[14]     In particular, Officer Storer contends he "had probable cause to arrest Escobar for his running from police, defying numerous lawful orders to stop and get on the ground and subsequently refusing to surrender his left arm and actively resisting [his] attempts to gain control of his arm." (Storer Aff. ¶ 18, Dkt. 17-7 at 5.) Additionally, Officers Steel, Cook, and Siddoway contend that Escobar continuously refused orders to surrender his free hand. (Cook Aff. ¶ 5, Dkt. 17-4 at 2; Siddoway Aff. ¶ 5, Dkt. 17-5 at 2; Steel Aff. ¶ 5, Dkt. 17-6 at 2.)

**MEMORANDUM DECISION AND ORDER - 16**

Dkt. 20-1 at 2.) Officer Storer claims that, after he shouted "stop," Escobar "continued to run toward a grassy knoll when [he] cut [Escobar] off" and drew his taser. (Storer Aff. ¶ 5, Dkt. 17-7 at 2.) Once again, Officer Storer ordered Escobar to stop, which he did. (*Id.*) Thereafter, Officer Storer "verbally ordered [Escobar] to the ground four times" and "advised [Escobar] that he would be tased if he did not comply." (*Id.*)

At the summary judgment stage, "[i]f the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Officer Storer's claim of probable cause depends on a finding that Escobar was resisting detention,[15] which would require the Court to credit the officers' account of the incident.

Accepting Escobar's account as true, the Court finds no indication that Escobar resisted detention for questioning after Officer Storer ordered him to stop. Construing the record as it must, the Court finds that a reasonable jury could conclude that Officer Storer did not have probable cause to arrest Escobar.

## C. *Arguable Probable Cause*

However, Officer Storer "may still be immune from suit if it was objectively reasonable for him *to believe* that he had probable cause." *Rosenbaum*, 663 F.3d at 1078 (emphasis in original) (citing *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1024 (9th Cir. 2009)). "The linchpin of the qualified immunity analysis is the reasonableness of the

---

[15] Resisting a lawful order for temporary detention is a misdemeanor under Idaho law. I.C. § 18-705; *see also Buck v. City of Sandpoint*, 2008 WL 4498806 at *12 (D. Idaho 2008).

officer's conduct in the particular case at hand." *Rosenbaum*, 663 F.3d at 1078 (citing *Anderson*, 483 U.S. at 638). This "acknowledges that an otherwise competent officer will sometimes make an unreasonable decision, or make an unreasonable mistake as to law or fact. In those instances, the officer will be appropriately liable under § 1983." *Id.* (citing *Liberal v. Estrada*, 632 F.3d 1064, 1078 (9th Cir. 2011)) (denying qualified immunity because the officer's mistake of fact was unreasonable). In other words, qualified immunity is unavailable when "the law [is] clearly established such that it would 'be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 1078–79 (quoting *Saucier*, 533 U.S. at 202).

The bulk of Officer Storer's argument regarding the "arguable probable cause" prong of the qualified immunity analysis relies on his assertion that he had actual probable cause to arrest based on the officers' observation that Escobar was defiant to Officer Storer's orders; therefore, "at a minimum," arguable probable cause must have existed. (Dkt. 17-1 at 20–21.) Officer Storer substantiates this argument by stating only that his affidavit testimony, along with the affidavits of Cook, Siddoway, and Steel, "all state that Escobar was actively resisting, that his conduct was in violation of Idaho Code § 18-705 and probable cause existed for his arrest." (*Id.*) Officer Storer contends this testimony provides at least arguable probable cause to arrest Escobar for resisting detention. (*Id.*)

However, when considering the facts in the light most favorable to Escobar, he immediately stopped at Officer Storer's first command. Under this version of the facts, every reasonable officer would have understood that it would be unlawful to arrest an

individual for resisting and obstructing when that individual had complied with the officer's commands. Thus, although there was reasonable suspicion to instigate a *Terry* stop when Officer Storer first observed Escobar running across the parking lot, the Court finds a reasonable jury could conclude that, absent other evidence to elevate the circumstances from a finding of reasonable suspicion, arguable probable cause did not exist for an arrest.

Even crediting Officer Storer's account of the encounter, Escobar continued to run after Officer Storer first ordered him to stop, but Escobar stopped running the second time he was ordered to stop. (Storer Aff. ¶ 5, Dkt. 17-7 at 2.) At this point, Officer Storer had reasonable suspicion to initiate a *Terry* stop and could conduct a reasonable search for weapons if Officer Storer believed Escobar was armed. *See Brigoni-Ponce*, 422 U.S. at 880–81. Officer Storer did neither. Instead, Officer Storer ordered Escobar to the ground and then used considerable force to arrest Escobar after he refused to comply. Accordingly, based on the record before it, the Court cannot find that, as a matter of law, Officer Storer is entitled to qualified immunity as to the false arrest claim. Therefore, summary judgment as to this claim will be denied.

**5.    Excessive Force**

**A.  *Is Use of Force Permitted During a Routine Terry Stop?***

The Court next considers Escobar's claim that Officer Storer used excessive force. If an officer's actions are objectively reasonable in light of the facts and circumstances, the officer will not be found to have used excessive force. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). However, "[w]here there is no need for force, *any* force used is

constitutionally unreasonable." *Jackson v. Johnson*, 797 F.Supp.2d 1057, 1071 (D. Mont. 2011) (emphasis in original) (quoting *Headwaters Forest Defense v. Cnty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000), *vacated and remanded on other grounds sub nom. Cnty. of Humboldt v. Headwaters Forest Defense*, 534 U.S. 801 (2001) (internal quotation marks omitted).

Because the Court concluded that Officer Storer had reasonable suspicion to conduct a *Terry* stop, but did not have probable cause to arrest, the Court's excessive force analysis focuses on whether Officer Storer was permitted to use force during the *Terry* stop. In an ordinary *Terry* stop where "an officer has no reason to suspect danger, it is a Fourth Amendment violation for the officer to employ aggressive tactics such as drawing a weapon, forcing a subject to lie prone on the ground, and using handcuffs." *Jackson*, 797 F.Supp.2d at 1057 (citing *United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990)). It is only under "special circumstances" that "intrusive techniques" are permitted to effectuate a *Terry* stop:

> 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur.

*Id.* (quoting *Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996)).

Taking the facts in a light most favorable to Escobar, none of these special circumstances were present at the time of the *Terry* stop: Escobar complied with Officer Storer's order to stop and was thereafter nonresistant; no evidence has been presented to suggest that Escobar may have been armed; the officers were not responding to a violent

crime; and the officers did not have any information that a violent crime was about to occur. Therefore, because it is a Fourth Amendment violation to employ aggressive tactics during a routine *Terry* stop and there were no "special circumstances" present, the Court finds that a reasonable jury could conclude Officer Storer violated Escobar's Fourth Amendment rights by employing unreasonably excessive force during the *Terry* stop.

### B. *Violation of Clearly Established Law*

Having concluded that Escobar has sufficiently alleged disputed facts supporting a constitutional violation, the next step in the qualified immunity analysis is whether the constitutional right was clearly established at the time of the conduct. At this step, the Court asks whether the contours of the right at issue were "'sufficiently clear' that every 'reasonable official would have understood that what he [was] doing violates that right.'" *Mattos*, 661 F.3d at 442 (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)). This is a pure question of law. *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985).

A right is sufficiently clear when Supreme Court precedent or a "robust consensus of cases" puts the constitutional question "beyond debate." *Plumhoff v. Richard*, 134 S.Ct. 2012, 2023 (2014) (quoting *al-Kidd*, 131 S.Ct. at 2083–84). The United States Supreme Court has instructed lower courts "not to define clearly established law at a high level of generality." *Id.* at 2023. Rather, "the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). After all, qualified immunity is intended to "give[ ] government officials breathing room to make reasonable but

mistaken judgments about open legal questions," thereby protecting "all but the plainly incompetent or those who knowingly violate the law." *al-Kidd*, 131 S.Ct. at 2085 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

The right at issue here is more specific than the general Fourth Amendment right to be free from unreasonable seizure. This case implicates Escobar's right to be free from significant force once he stopped and surrendered. *See Gravelet-Blondin*, 728 F.3d 1086. At the time of Escobar's arrest in August of 2011, the Ninth Circuit had decided at least three cases involving tasers: *Bryan*, *Brooks*, and *Mattos*. In each case, a three-judge panel found the officers involved were entitled to qualified immunity. *Bryan*, 630 F.3d 805; *Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010), *vacated by en banc decision in Mattos*, 661 F.3d 433; *Mattos v. Agarano*, 590 F.3d 1082 (9th Cir. 2010), *vacated by en banc decision in Mattos*, 661 F.3d 433.

After Escobar's arrest, the Ninth Circuit reheard *Brooks* and *Mattos* en banc. In the consolidated en banc case, the court concluded that, although both cases involved the use of unconstitutional and excessive force, the officers were nonetheless entitled to qualified immunity because their use of tasers against minimally resistant subjects did not violate clearly established law. *Mattos*, 661 F.3d at 433. Qualified immunity also was granted to the officer in *Brooks* who used a taser in dart mode against an unarmed, but belligerent and noncompliant subject pulled over for a seatbelt violation. 630 F.3d at 822, 830.

More recently, the Ninth Circuit decided *Gravelet-Blondin*, which held that the use of non-trivial force on a passive subject "was clearly established prior to 2008." 728

F.3d at 1093 (citing *Nelson v. City of Davis*, 685 F.3d 867, 881 (9th Cir. 2012)) (cases dating back to 2001 have established that "[a] failure to fully or immediately comply with an officer's orders neither rises to the level of active resistance nor justifies the application of a non-trivial amount of force"). The Ninth Circuit held that the officer's use of a taser on a passive bystander was so egregious that the constitutional question was beyond debate years before the decisions involving tasers were rendered in *Bryan* and *Mattos*. *Id.* at 1096.

Under Escobar's recitation of the facts, every reasonable officer would have understood that the use of a taser coupled with physical force on a passive and compliant subject is a clear violation of an established constitutional right. Therefore, viewing the facts in a light favorable to Escobar, the Court cannot conclude, as a matter of law, that Officer Storer is entitled to qualified immunity on the excessive force claim.

**6. Malicious Prosecution**

Officer Storer argues also that he is entitled to summary judgment on Escobar's malicious prosecution claim. To survive summary judgment, Escobar must present evidence that Officer Storer "prosecuted [him] with malice and without probable cause, and that [Officer Storer] did so for the purpose of denying [him] equal protection or another specific constitutional right." *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985)) (en banc) (emphasis added). "In general, a claim of malicious prosecution is not cognizable under § 1983 'if process is available within the state judicial systems' to provide a remedy, although '[the Ninth Circuit has] also held that an exception exists . . . when a malicious

prosecution is conducted with the intent to . . . subject a person to a denial of constitutional rights.'" *Lacey v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012) (quoting *Bretz*, 773 F.2d at 1031). But, even in cases where the plaintiff invokes this exception, the arresting officer is liable for malicious prosecution only if the plaintiff can rebut the presumption of prosecutorial independence. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004). "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Id.*

Escobar has failed to carry his burden on this claim in two respects. First, he neither alleges nor argues that the prosecution violated any of his "*specific constitutional rights*." *Bretz*, 773 F.2d at 1031 (emphasis added). Rather, Escobar alleges Officer Storer maliciously prosecuted him in violation of his "rights under 42 U.S.C. § 1983." (Complaint ¶ 27, Dkt. 1.) Section 1983, of course, is not the source of any substantive rights. *Graham*, 490 U.S. at 393–94. Nor has Escobar presented evidence to flesh out this vague allegation of wrongdoing. Without a specific allegation of a constitutional violation (and underlying evidence), Escobar has failed to support an essential element of his malicious prosecution claim.

Second, even if the Court could infer a specific constitutional violation from the record, Escobar has not overcome the presumption of prosecutorial independence. The presumption stands absent some showing that Officer Storer "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed

exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Awabdy*, 368 F.3d at 1067. Escobar's affidavit, the only evidence presented in opposition to summary judgment, includes nothing about the legal proceedings after his arrest on August 6, 2011. The record is otherwise bereft of evidence sufficient to rebut the presumption. Therefore, the Court will grant Officer Storer's motion for summary judgment on the malicious prosecution claim.

## CONCLUSION

The allegations in Escobar's Complaint rely upon whether he complied with Officer Storer's orders. There are disputed issues of material fact regarding whether Escobar complied with Officer Storer's orders, whether probable cause existed for arrest of Escobar, and what amount of force was actually exerted or justified to detain or arrest Escobar. As such, summary judgment on the false arrest and excessive force claims will be denied. However, Escobar's malicious prosecution claim fails because the Court does not find any genuine issue of material facts, disputed or otherwise, to support his prima facie case on that claim.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Defendant's Motion for Summary Judgment (Dkt. 17) is **GRANTED IN PART AND DENIED IN PART**.

2) The Court will conduct a telephonic scheduling conference with the parties for the purpose of setting pretrial deadlines and a trial date in this matter. A separate notice of hearing is forthcoming.

Dated: **January 27, 2015**

Honorable Candy W. Dale
United States Magistrate Judge